UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, LAFACE RECORDS, LLC, SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC., AND WARNER BROS. RECORDS, INC., <br><br> *Plaintiffs*, <br><br> -against- <br><br> SPINRILLA, LLC AND JEFFREY DYLAN COPELAND, <br><br> *Defendants*. | CIVIL ACTION <br><br> MISC. Case No. 17-mc-00359 <br><br> No.: 1:17-CV-00431 <br> (pending in Northern District of Georgia) |

**REPLY MEMORANDUM OF LAW OF NON-PARTY WILLIAM ROSENBLATT IN FURTHER SUPPORT OF HIS APPLICATION FOR REASONABLE ATTORNEY'S FEES AND COSTS**

**TENAGLIA & HUNT, P.A.**
395 West Passaic St., Suite 205
Rochelle Park, NJ 07662
P: (201)820-6001
Attorneys for Non-Party William Rosenblatt

By Order and Decision dated October 26, 2017, the Court granted Non-party William Rosenblatt's ("Rosenblatt") motion to quash a subpoena and request for an award of reasonable attorney's fees and costs.  This Reply Brief is submitted in response to Defendants' opposition papers and in further support of Mr. Rosenblatt's application for fees and costs.

## LEGAL ARGUMENT

Rather than gracefully accept the Court's findings and stop the bleeding, Defendants and their counsel show their true colors and file a bogus 16-page opposition to Rosenblatt's fee application.  Lilenfeld and Defendants' arguments are quite illuminating as they manage to blame Rosenblatt at every turn, even though the Court agreed with Rosenblatt's legal positions and quashed the Subpoena and awarded fees.  As a result, Defendants and their attorney David Lilenfeld have continued to drive up Rosenblatt's legal costs, forcing Rosenblatt's counsel to waste more time on this matter in filing this Reply Memorandum.  As Rosenblatt previously made clear, the time spent on the fee application itself is compensable. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 428 (2d Cir. 1999);  *Source Vagabond Sys. v. Hydrapak, Inc.*, No. 11-5379, 2013 U.S. Dist. LEXIS 4853, at *36-37 (S.D.N.Y. Jan. 11, 2013); *Prospect Capital Corp. v. Enmon*, No. 08-3721, 2010 U.S. Dist. LEXIS 64312, at *4 (S.D.N.Y. June 23, 2010)  ("Where a sanctions motion is granted, courts may award costs relating to the sanctions motion itself.").

The Court's October 27, 2017 Decision and Order granting the motion to quash the invalid subpoena issued by Lilenfeld and Defendants stated that the Court "will award Mr. Rosenblatt reasonable attorney's fees and costs."  Decision and Order, at 1.  Lilenfeld and Defendants' arguments have no merit.  Lilenfeld's claim that Rosenblatt has "hamstrung" the Court is the height of hypocrisy – it is Lilenfeld and his clients who have hamstrung Rosenblatt.

1

It is only fair and just to reimburse Rosenblatt for all of the reasonable attorney's fees and costs he has unfairly incurred as a result of Lilenfeld and Defendants' absurd pursuit of the Subpoena and stubborn refusal to stand down. All of Rosenblatt's attorney's time that was billed in this matter was related to the invalid Subpoena, and was incurred as a direct result of (1) the invalid Subpoena that the Court ultimately quashed, and (2) Lilenfeld and Defendants' obstinate refusal to withdraw the Subpoena even after Rosenblatt and his attorney made numerous reasonable attempts to resolve the matter amicably. Indeed, the Court in its ruling found that Spinrilla and Lilenfeld not only failed to take reasonable steps to avoid the undue burden of the Subpoena on Rosenblatt, "[i]n fact, they spurned such steps." Decision and Order, at 6. Again, for the most part, all of Rosenblatt's attorney's time dealt with either (1) drafting and editing the motion to quash, or (2) attempting to amicably resolve the Subpoena issue so as to avoid the motion or at least minimize the amount of attorney's fees that might be incurred.

For these reasons, Defendants' claim that no fees are compensable because of "block billing" is without merit. First, not all of the billing in this matter was "block billed." Nevertheless, block billing should not be a concern here because, again, every minute that was expended related directly to defending our client against the invalid Subpoena, either in preparing the motion to quash, or attempting to negotiate reasonable resolutions to avoid the motion to quash. In other words, this is not a matter in which any description of the billing on the invoices would include work not related to the Subpoena – to the contrary, *all of the legal work* reflected on the legal bills related to the Subpoena in some way. As such, all of that time should be compensable.

Simply put, Defendants and their counsel should not be rewarded for their recalcitrance in refusing to withdraw the Subpoena, which needlessly drove up the legal expenses incurred by

Mr. Rosenblatt. As the Court found, "Mr. Rosenblatt put forward several reasonable proposals to give Defendants the essential elements of the information they desired. But Defendants rejected them all, **needlessly escalating and prolonging a matter** for which they had minimal need or justification." Decision and Order, at 6 (emphasis added).

Moreover, Rosenblatt's attorneys' legal billing was recorded contemporaneously. *See* Supplemental Declaration of James T. Hunt, Jr. ("Supp. Hunt Dec."), at ¶¶2-5, submitted herewith. Rosenblatt and his counsel thought this was made clear in the comprehensive Declaration submitted in support of his request for fees with legal invoices attached.

In addition, it is clear that Rosenblatt should be fully compensated for all of his fees incurred in this matter, which he submits are quite reasonable under the circumstances. Lilenfeld's reading of the Court's ruling is much too restrictive. All of Rosenblatt's attorney's fees should be reimbursed to Rosenblatt. All of Rosenblatt's attorney's time spent on this matter involved dealing with and defending against the invalid Subpoena issued by Lilenfeld and Defendants, which the Court quashed. Additional time that was expended included attempting (unsuccessfully) to deal reasonably with Lilenfeld, and, as the Court specifically found, Lilenfeld and Defendants did not act in good faith.

For example, Spinrilla takes issue with time spent reviewing the Court's decision – but that obviously was directly related to the motion to quash, as it was the Court's decision on the motion itself. As an additional example, Lilenfeld takes issue with a time entry in which attorney Hunt was "communicating various potential resolutions to Mr. Lilenfeld" and preparing a confidentiality agreement. Defendants' Opposition at 5. However, this is compensable because (1) it directly relates to the motion to quash insofar as it was a reasonable attempt to avoid the motion altogether; and (2) the Court specifically criticized Spinrilla and Lilenfeld's

rejection of Rosenblatt's "several reasonable proposals." *See* Decision and Order, at 6 ("But Defendants rejected them all,…").  Again, the Court found that Spinrilla and Lilenfeld "needlessly escalat[ed] and prolong[ed] a matter…." *See* Decision and Order, at 6.  Spinrilla and Lilenfeld should not be rewarded for such a blatant violation of court rules and bad-faith conduct, and Rosenblatt – an innocent non-party – should not have to suffer the consequences.

Next, Spinrilla and Lilenfeld's incredible claim that Mr. Rosenblatt took the "worst possible course of action" is so simultaneously laughable and despicable it deserves stern condemnation from the Court, if not additional sanctions.  *See* Defendants' Opposition, at 7. This statement proves Spinrilla and Lilenfeld simply "do not get it."  This is the sort of bizarre reasoning that led us to this point in the first place.  Rosenblatt should not have to suffer the financial damages of incurring attorney's fees and costs for this type of unhinged, unreasonable, and plain wacky thinking.

The only individuals who took the "worst possible course of action" here were Lilenfeld and his clients, in first issuing the invalid Subpoena (which the Court quashed), and then "needlessly" prolonging the matter by refusing the many "reasonable" attempts at resolution by Rosenblatt.  Lilenfeld and Defendants now desperately spout flat out falsehoods in their attempts to further prolong this matter.  For example, Lilenfeld claims Rosenblatt ultimately produced all of the requested documents.  That is not true.  Rosenblatt, in an attempt at a reasonable resolution, produced only a <u>limited</u> number of documents pursuant to a confidentiality agreement, but did not produce all of the documents requested by Lilenfeld.  And Rosenblatt's provision of documents was certainly not voluntary – it was done under the threat of a subpoena, which carries the potential of court fines if not complied with or found to be invalid.  In any event, the Court already determined that Rosenblatt's efforts to resolve the matter were

"reasonable," and Lilenfeld and Defendants' refusal to comply with such reasonable requests "needlessly" drove up the costs of this matter. *See* Decision and Order, at 6. Lilenfeld and Defendants cannot now re-write history.

Displaying a bizarre legal argument that is the complete height of hypocrisy, Lilenfeld chooses to blame the victim, Rosenblatt, for not caving in to Lilenfeld's demands to appear at a deposition – a deposition ***based on an invalid subpoena that the Court quashed and deemed in violation of court rules***. Lilenfeld also claims – without any evidence or support whatsoever – that Rosenblatt's attorneys should have spent only eight to ten hours on the matter. Yet Lilenfeld simply makes this blanket and conclusory statement with no reasoning or support whatsoever.

In addition, Lilenfeld's argument that Rosenblatt "publicly" disclosed information is absurd and, again, a blame-the-victim argument. Rosenblatt did not publicly disclose any of this personal or private business information or documents. And Rosenblatt required Lilenfeld and Defendants to sign a confidentiality agreement for the limited documents he did produce. Lilenfeld also falsely claims the Subpoena was very "narrow," ignoring and contradicting the Court's opinion that the "breadth of the request touches most every communication Mr. Rosenblatt made during that period, without regard to whether the communication is personal, professional, or privileged." Decision and Order, at 5. Lilenfeld cannot now re-litigate the motion to quash or try to defend the Subpoena, as the Court has held that "[n]early every relevant factor weighs <u>heavily</u> in favor of quashing the subpoena." *Id.* (emphasis added).

Lilenfeld also falsely claims that Rosenblatt's declaration "provides most but not all of the information that was sought through the Subpoena." Defendants' Opposition, at 8 n.3. That is clearly not true. If it were, one would imagine Lilenfeld would have withdrawn the Subpoena after Rosenblatt's declaration was filed. Of course, Lilenfeld did not. The reality is that the

5

Subpoena sought privileged and personal records and documents – Rosenblatt's declaration did not attach any records or documents whatsoever. Rosenblatt's declaration merely recited the background history of what occurred and the reasons the Subpoena was unduly burden and should be quashed. And Rosenblatt had previously offered to provide an affidavit to Lilenfeld – which was rejected by Lilenfeld and Defendants anyway.

Lilenfeld also falsely states that Rosenblatt agreed to be an expert witness for Spinrilla. That is untrue. In fact, Rosenblatt was never given, and never signed, a retainer agreement to be Spinrilla's expert witness and was never paid one cent by Spinrilla.

Another comment by Lilenfeld is so outrageous and hypocritical that it warrants special attention. In attempting to argue that time spent negotiating a resolution to the invalid Subpoena should not be compensable, Lilenfeld makes the stunning statement that "Not to mention that litigants should be encouraged to try to resolve disputes." Defendants' Opposition, at 10. Yet Lilenfeld and his clients did not heed their own advice. The Court, of course, already determined that Rosenblatt "put forward several reasonable proposals," but that Lilenfeld and his clients "rejected them all." *See* Decision and Order, at 6.

In fact, even in the face of the Court's Decision and Order, Lilenfeld still stubbornly attempts to re-litigate the Subpoena, claiming it was a valid attempt to find out if the Plaintiffs in the underlying case "got to" Rosenblatt. *See* Defendants' Opposition, at 13-14. This baseless, regurgitated argument is reminiscent of a child who simply has not learned his lesson. Defendants' opposition is indeed littered with such "blame the victim" comments and reasoning, which the Court should denounce. For example, Lilenfeld and Defendants have the gall and audacity to actually claim that "Mr. Rosenblatt should not have resisted the Subpoena in the first place." *See* Defendants' Opposition, at 15. Rosenblatt is hopeful that the Court's decision in

6

this regard will send a strong message to Lilenfeld and Defendants, as such an award of attorney's fees and costs appears to be necessary in order to deter Lilenfeld and Defendants from conducting themselves similarly in the future.

Unfortunately, as a result of Lilenfeld and Defendants continued obstinacy, Rosenblatt's attorney spent an additional five (5) hours of time (1) reviewing Lilenfeld and Defendants' recently filed opposition papers, and (2) drafting and editing a reply memorandum of law and supplemental declaration in response to same. This additional billing time was contemporaneously recorded and is explained and provided for in the Supplemental Declaration of James T. Hunt, Jr., Esq., submitted herewith, along with a legal bill with a description of services. *See* Supp. Hunt Dec., at 6, 9, Exhibit A. At $350 per hour, this amounts to an additional $1,750 in legal fees for this matter. Accordingly, because time spent on the fee application is compensable, Mr. Rosenblatt seeks $18,057 in total reasonable legal fees and costs from David M. Lilenfeld, Esq., personally, the law firm of David M. Lilenfeld, Esq., (known as "Lilenfeld PC"), Spinrilla, LLC, and Jeffrey Dylan Copeland.

## CONCLUSION

For the foregoing reasons, non-party William Rosenblatt respectfully requests that the Court award him a total of $18,057 in total reasonable legal fees and costs from David M. Lilenfeld, Esq., personally, the law firm of David M. Lilenfeld, Esq., (known as "Lilenfeld PC"), Spinrilla, LLC, and Jeffrey Dylan Copeland.

Dated: December 18, 2017

                                            **TENAGLIA & HUNT, P.A.**

                                            By: _____
                                                James T. Hunt, Jr., Esq.